UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

------------------------------------------------------------------X

CHARLES TAYLOR,

        Petitioner,

      -against-

**<u>MEMORANDUM AND ORDER</u>**
16-CV-3702 (JMA)

MICHAEL CAPRA, SUPERINTENDENT

        Respondent.

------------------------------------------------------------------X

**APPEARANCES:**

**FILED**
**CLERK**

8/3/2018 2:46 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Charles Taylor
     <u>Pro se</u> Petitioner

Cristin N. Connell, Assistant District Attorney
Alyson Gill, Assistant Attorney General
Nassau County District Attorney's Office
262 Old Country Road
Mineola, NY 11501
     *Attorneys for Respondent*

**AZRACK, United States District Judge:**

On November 29, 2012, following a jury trial in state court, Charles Taylor ("Taylor") was convicted of one count of Assault in the First Degree and two counts of Assault in the Third Degree. On February 7, 2013, Taylor received a sentence of twenty years to life in prison on the Assault in the First Degree count and one year of imprisonment on the Assault in the Third Degree counts, with both sentences to run concurrently.

Taylor, proceeding <u>pro se</u>, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising a number of separate grounds. For the following reasons, all of Taylor's proffered grounds are either procedurally barred or without merit. Therefore, the petition is DENIED in its entirety.

1

# I. BACKGROUND

The following facts are taken from the petition and the state court record.[1]

## A. Factual Background

In 2011, Taylor was living in Rockville Center, New York, with his girlfriend Cynthia Rainey ("Cynthia"), her teenage daughter Lexus Lewis ("Lexus"), her ten-year-old son Anthony Starks ("Anthony"), and her five-year-old son Waheed Starks ("Waheed"). (Tr. 530, 425-26.) Taylor first met Cynthia when they were teenagers and the two dated on and off throughout the years. (Tr. 531.) The relationship between Taylor and Cynthia included instances of both verbal and physical abuse. (Tr. 532-34, 578-79.)

On July 10, 2011, at approximately 8:30 P.M., Taylor and Cynthia picked up Anthony from his biological father's home and a verbal dispute occurred while they were driving home. (Tr. 539-40.) During this dispute, Taylor made disparaging remarks about Anthony's father, after which Cynthia Rainey insisted that Taylor stop speaking that way in front of her son. (Tr. 540.) The fight continued upon returning home, during which Anthony heard Taylor threaten to kill his mother. (Tr. 498-99.) At approximately 10:23 P.M., Nassau County Police Officers Arlene Butts, John Liston, Averill Thompson, and Marissa Stork responded to the fight and observed Taylor and Anthony's biological father engaged in a verbal argument. (Tr. 343-48.) The police officers spoke with Cynthia, who explained that she had called 911 because of the argument and that she lived at the location with Taylor. (Tr. 367-68, 540-41.) No arrests were made, but the Police Officers instructed both men to leave the location and they complied. (Tr. 343-48.) However, before Taylor left the location, Cynthia took his only key to the home to prevent him from getting into the house. (Tr. 542.)

---

[1] "Tr." refers to the trial transcript, People v. Taylor Trial Tr., Nov. 15-19, 26-29, 2012, ECF Nos. 7-1, 7-2, 7-3, and 7-4. "S." refers to the transcript for the sentencing proceedings, People v. Taylor S. Tr., Feb. 7, 2013, ECF No. 7-5.

In the hours that followed, Taylor called Cynthia multiple times and sent her threatening text messages. (Tr. 542-44.) In one of these communications, Taylor told Cynthia that he was going to make it so nobody else would want her. (Tr. 543.) Cynthia tried to call Taylor's family members to inform them of the threats, but was unable to speak to any of his relatives and decided to go to sleep. (Tr. 544.)

That night Cynthia slept in one of the upstairs bedrooms in the house and Lexus slept in the basement. (Tr. 426, 545.) Cynthia woke up in the middle of the night to loud booming sounds and she called out to her daughter, believing that she had made the noise. (Tr. 545-46.) Lexus responded that she had not heard a noise and Cynthia went back to sleep. (Tr. 427, 546.) Shortly thereafter, Cynthia heard another booming sound, woke up, and saw Taylor standing beside her bed, stating "I told you I was coming back." (Tr. 547.) Cynthia then felt Taylor stab her in her face and arms with a sharp object. (Tr. 547-48.) Cynthia was able to escape the bedroom, where her son Waheed remained asleep, and began screaming for her daughter's help. (Tr. 547-48.) Once outside the bedroom, Cynthia collapsed to the floor of the hallway and Taylor began stabbing her in the stomach. (Tr. 547-48.)

At this point Cynthia heard her son Anthony approach. (Tr. 547.) Anthony woke up during the incident and saw Taylor striking his mother with a sharp object; he approached to help her. (Tr. 499-500.) Taylor then shoved Anthony, causing him to fall to the ground; during which a sharp object cut Anthony's chest, causing a bleeding laceration to his chest. (Tr. 500-01.)

Lexus also woke up during the incident, ran upstairs from the basement, and observed Anthony holding his bleeding chest and Taylor striking her mother in the face while holding a sharp object in his hand. (Tr. 427.) Lexus punched Taylor in the back of the head, at which point Taylor turned and began punching Lexus multiple times about the face. (Tr. 427-28.) Lexus then

fled to the kitchen to get a weapon to stop Taylor, but Taylor ran out the front door.  (Tr. 428.)
Lexus retrieved Cynthia's phone and both Lexus and Cynthia called 911.  (Tr. 430, 548.)

Police Officers Butts and Thompson again responded to Cynthia's home.  (Tr. 369-70.)
When the police officers arrived, they observed Cynthia bleeding from multiple areas on her body;
an ambulance was called, and she was taken to a local hospital.  (Tr. 370-73.)  Further, the police
officers observed Anthony with a bleeding laceration to his chest; he was taken to the hospital for
medical treatment.  (Tr. 373-74, 501.)  Lexus was treated for her injuries at the scene; she suffered
cuts to her lips, pain about the face and mouth, as well as teeth marks inside her mouth.  (Tr. 433-
34.)  Officer Butts then investigated the scene of the incident and observed blood on the bedroom
walls.  (Tr. 375.)  Further, Office Butts noticed that the window in the rear bedroom was pushed
open with its screen pushed to the side, and a table was pushed up against the house directly outside
the open window.  (Tr. 375.)  Officer Butts saw that the floor near the open window had blood on
it with multiple nails sticking out of the floor.  (Tr. 376.)  According to Lexus, prior to the incident
this window was closed and there was no table beside it.  (Tr. 436.)  Police Officers determined
that this open window was Taylor's point of entry into the house.  (Tr. 325.)

With regard to medical treatment, Anthony received stitches to close the laceration on his
chest and has a scar where he was cut.  (Tr. 501.)  Cynthia received treatment from Doctor Safran
at South Nassau Hospital; he observed the wounds to her face, arm and abdomen.  (Tr. 690-92.)
Doctor Safran determined that her injuries were consistent with stab wounds from a sharp object.
(Tr. 698-99.)  Cynthia underwent surgery for her abdominal wound, during which her internal
organs were evaluated; there were two lacerations to her small intestine and one laceration to her
abdominal wall.  (Tr. 695-96.)  These internal injuries were stitched closed.  (Tr. 697.)  Doctor
Safran confirmed that if Cynthia had not received treatment for her internal injuries that they may

4

have been life threatening. (Tr. 705-06.) In addition, Cynthia received staples to close the laceration on her arm and sutures to close the lacerations on her face. (Tr. 699.)

Taylor was arrested; following the arrest, he started communicating with Cynthia through phone calls and letters. (Tr. 555-76.) During these communications, Taylor asked Cynthia to inform the Government that she had no recollection of the events and to claim she was unable to testify. (Tr. 556.) Cynthia sent the Government an affidavit indicating that she did not want to cooperate with the prosecution of Taylor. (Tr. 556-58.) However, in the subsequent months, Cynthia decided to pursue charges against Taylor. (Tr. 559-60, 568.)

Taylor was tried in New York Supreme Court, Nassau County, starting on November 15, 2012. (Tr. 20.) At trial, the prosecution provided documentary evidence and presented the testimony of Cynthia, Anthony, and Lexus; police officers and emergency medical workers who responded to the scene; and Doctor Safran to discuss the relevant medical treatment provided. (Tr. 317-711.) Following the prosecution's evidence, Taylor's attorney made a motion for a trial order of dismissal, stating:

> At this time the defense moves for a trial order of dismissal based on the fact that the People have not established a prima facie case with respect to each and every element of each and every count charged in the indictment. Specifically, with respect to the count involving attempted murder . . . assault in the first degree, and assault in the second degree.

(Tr. 711.) The trial court denied the motion and the defense did not call any witnesses. Defense counsel then renewed the motion to dismiss, stating:

> Just, I renew the same application for a trial order of dismissal based on the fact that the People have not proven the case beyond a reasonable doubt.

(Tr. 723.) The trial court denied this motion and the jury began deliberations. On November 29, 2012, following two days of jury deliberations, Taylor was convicted of Assault in the First Degree as to Cynthia, pursuant to New York Penal Law § 120.10(1); Assault in the Third Degree as to Anthony, pursuant to New York Penal Law § 120.00(2); Assault in the Third Degree as to Lexus, pursuant to New York Penal Law § 120.00(1); and Aggravated Harassment in the Second Degree, pursuant to New York Penal Law § 240.30(1)(a). (Tr. 846-47.) Taylor was acquitted of Attempted Murder in the Second Degree as to Cynthia, pursuant to New York Penal Law § 110/125.25(1); and Assault in the Third Degree as to Anthony, pursuant to New York Penal Law § 120.00(1). (Tr. 846-47.)

On February 7, 2013, Taylor was sentenced as a persistent violent felony offender to a term of incarceration of twenty years to life for the Assault in the First Degree count and to a term of incarceration of one year for the remaining Assault counts, with all terms to run concurrently. (S. 10.)

Notable for purposes of this Petition, during the cross examination of Anthony, he became visibly upset and the Government asked for a recess. (Tr. 522.) The trial court ordered the jury to exit the courtroom, at which point Anthony stated (apparently to Taylor): "I'm going to tell my uncle Andre. I'm going to kill you. You're a dead man." (Tr. 522-23.) The jury then exited and a brief recess was taken. (Tr. 523.) During the recess, the following exchange took place:

> Mr. Alford: Your Honor, just one more thing. I would ask also - - it appears that Ms. Nickerson [the prosecutor] is crying based on what happened. I would ask that she compose herself before this jury comes back in.
>
> The Court: She appears composed to me, Counsel.
>
> (Pause in the proceedings.)

The Court: All right, let's try this again.  Do you have any further cross-examination without a condition precedent or antecedent, Mr. Alford?

Mr. Alford: Yes, your Honor.

The Court: Okay.  Reseat the witness, please.

Ms. Nickerson: Judge, can I have two minutes?  I do need to compose myself.

The Court: Yes.  Tell them to hold the jury.

(Tr. 527.)  After this recess, the jury was brought back into the courtroom and the trial continued.

(Tr. 528-29.)

## B. Post-Conviction Proceedings

### 1. The Direct Appeal

On June 30, 2014, Taylor appealed his conviction to the Second Department of the New York State Appellate Division.  On appeal, he argued: (1) that his convictions were based on legally insufficient evidence because portions of the trial testimony were incredible as a matter of law; (2) that his conviction of Assault in the First Degree was legally insufficient as the prosecution failed to prove the requisite intent or injury; and (3) that he was deprived effective assistance of counsel when his attorney failed to request the trial court inquire whether the jurors could remain fair upon seeing the prosecutor cry in the courtroom, thus resulting in an unfair trial.  (See Def.'s App. Br., June 30, 2014 ("App. Div. Br."), at 18-32, ECF No. 7-6.)[2]  The Second Department vacated Taylor's conviction of Aggravated Harassment in the Second Degree, as the statute had been found to be unconstitutionally vague by the New York State Court of Appeals.  People v. Taylor, 126 A.D.3d 1018, 1019 (N.Y. App. Div. 2d Dep't 2015).  The Second Department affirmed Taylor's remaining counts of conviction.  Id.  With regard to the legal insufficiency claim, the

---

[2] The Court uses the pagination assigned by the electronic case filing system for ECF No. 7-6.

Second Department found that the claim was both unpreserved for appellate review and without merit.  Id.  The court then addressed the ineffective assistance of counsel claim and denied the claim on the merits, stating Taylor "was not deprived of the effective assistance of counsel, as the record reveals that defense counsel provided meaningful representation."  Id.

On May 27, 2015, the New York State Court of Appeals denied Taylor's request for leave to appeal.  People v. Taylor, 25 N.Y.3d 1077 (N.Y. 2015).

**2. The Instant Petition**

Taylor filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 21, 2016, asserting two grounds for relief: (1) that his convictions were based on insufficient evidence; and (2) that trial counsel provided ineffective assistance of counsel.  (See Pet. at 5-7, ECF No. 1.)[3]  For the reasons discussed below, all of Taylor's claims are either procedurally barred or without merit.  Thus, the instant petition is DENIED in its entirety.

**II. DISCUSSION**

**A. Standards of Review**

**1. Overview of AEDPA**

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."  Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To make that showing, the petitioner must demonstrate: (1) the exhaustion of state

---

[3] The Court uses the pagination assigned by the electronic case filing system for ECF No. 1.

remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions. See id. § 2254.

### 2. Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). This procedural bar applies even if the state court addressed a claim's merits in the alternative but decided that claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original). When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar, a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, a petitioner must put forth that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by

officials … made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation. See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016), cert. denied, 137 S.Ct. 106 (2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petition to establish cause) not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage…." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result. For example, a petitioner can overcome a procedural bar by showing "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence … that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

**3. AEDPA Standard of Review**

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring).  A decision involves an "unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."  Id. at 413.  This standard does not require that all reasonable jurists agree that the state court was wrong.  Id. at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'"  Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'"  Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)).  This standard is "difficult to meet," and for good reason.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014).  A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 1702.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

**4. Pro Se Status**

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Taylor's pro se status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). This liberal interpretation of the petition "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

**B. Claims for Relief**

As mentioned above, Taylor seeks habeas relief on two separate grounds: (1) that his convictions were based on legally insufficient evidence; and (2) that he received ineffective assistance of counsel during trial. For the following reasons, the petition is DENIED in its entirety.

### 1. Legal Insufficiency Claim

Taylor contends that the Second Department: (1) erred in determining that his legal insufficiency arguments were procedurally barred; and (2) unreasonably applied clearly established federal law in denying his arguments on the merits.  In Taylor's direct appeal to the Second Department he argued that his conviction was based on legally insufficient evidence in that: (1) the testimony that he stabbed Cynthia Rainey with a pointy object was patently incredible; (2) the prosecution failed to show that he possessed the requisite intent to cause serious physical injury; and (3) the evidence failed to establish that the injuries caused were sufficiently serious to establish the requisite serious physical injury.  (See App. Div. Br., at 18-29.)  The Second Department denied this claim, finding that the evidence was legally sufficient to support the jury's determination and finding that this claim was unpreserved for appellate review.  Taylor, 126 A.D.3d at 1019.  As Taylor concedes, the Second Department denied his legal insufficiency claim "on the basis of an adequate and independent state ground: New York's contemporaneous objection rule."  (See Pet'r's Memorandum of Law, at 1-2, ECF No. 1-1.)  However, Taylor argues that as his attorney made oral motions to dismiss during trial, the legal insufficiency claim was properly preserved for appellate review since petitioner's counsel clearly was sufficiently specific to give both the court and the People adequate notice of the basis for the motion.  (Pet'r's Memorandum of Law at 2-3.)  As stated above, Taylor's attorney made the following oral applications during trial:

> Mr. Alford: Yes, your Honor.  At this time the defense moves for a trial order of dismissal based on the fact that the People have not established a prima facie case with respect to each and every element of each and every count charged in the indictment.  Specifically, with respect to the count involving attempted murder, the count - - I'm sorry, the count involving attempted murder, assault in the first degree and assault in the second degree.

(Tr. 711.)

> Mr. Alford: Just I renew the same application for a trial order of dismissal based on the fact that the People have not proven the case beyond a reasonable doubt.

(Tr. 723.)

This Court finds that Taylor's legal insufficiency claim is procedurally barred, as the Second Department "expressly relied on a procedural default as an independent and adequate state ground" when rejecting this argument. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)). "New York courts have consistently held that a general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged." Fore v. Ercole, 594 F. Supp. 2d 281, 289 (E.D.N.Y. 2009) (citing People v. Gray, 86 N.Y.2d 10, 20-22, 629 N.Y.S.2d 173, 652 N.E.2d 919 (N.Y. 1995).

Because Taylor's counsel made only generalized motions to dismiss during the trial and failed to point to what was insufficient about the evidence presented, these oral motions did not preserve his legal insufficiency arguments. Further, Taylor has failed to allege any cause, prejudice, or a fundamental miscarriage of justice resulting if he is barred from habeas review; therefore, Taylor cannot overcome this procedural bar. See Coleman, 501 U.S. at 750.

Additionally, the Court finds this claim to be without merit. When seeking habeas corpus relief based on the legal sufficiency of the evidence, the petitioner "bears a very heavy burden." Einaugler v. Supreme Court of the State of N.Y., 109 F.3d 836, 840 (2d Cir. 1997) (quoting Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction will not be disturbed if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought

under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") (quoting Jackson, 443 U.S. at 324). When considering a claim of legally insufficient evidence, the facts are viewed in the light most favorable to the verdict. See Garbutt v. Conway, 668 F.3d 79, 80-81 (2d Cir. 2012) (per curiam). "In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime." Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993).

Having considered all the crimes of which Taylor was convicted, the Court concludes that the Second Department's upholding of the convictions is neither contrary to nor an unreasonable application of clearly established federal law and its decision was not based on an unreasonable determination of the facts.

As mentioned above, Taylor was convicted of one count of Assault in the First Degree and two subsections of Assault in the Third Degree. Pursuant to the New York State Penal Law, "[a] person is guilty of assault in the first degree when, with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1). "Serious physical injury" means "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(1). Further, "dangerous instrument" means "any instrument . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury." N.Y. Penal Law § 10.00(13). Additionally, "[a] person is guilty of assault in the third degree

when: (1) [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) [h]e recklessly causes physical injury to another person."  N.Y. Penal Law § 120.00(1) & (2).   Physical injury means "impairment of physical condition or substantial pain."  N.Y. Penal Law § 10.00(9).

In the instant petition, Taylor contends that the following alleged deficiencies amounted to insufficient evidence: (1) the victims coordinated their versions of the event and expressed a desire to see Taylor incarcerated; (2) Lexus gave conflicting versions of evidence to the Police Department, Grand Jury, and at trial; (3) Anthony's statement that he saw his mother stabbed is not noted in the hospital records or police reports; (4) Cynthia testified that she did not see the sharp object that stabbed her; and (5) Cynthia stated that she misplaced a letter Taylor sent to her in which he admitted to his conduct.  (See Pet'r's Memorandum of Law at 6-8.)

However, when the Court considers the trial record in its entirety, the Court determines that there was substantial evidence to support the jury's determination of Taylor's guilt.  This issue is not close.  Over the course of the trial, the prosecution presented evidence via testimony from the victims: Cynthia, Anthony, and Lexus.  (Tr. 425-680.)  Further, the jury heard testimony from Doctor Safran, who testified regarding the serious nature of the injuries Cynthia suffered.  (Tr. 687-710.)  Additionally, members of the Police Department and Emergency Medical responders testified and corroborated significant portions of the victims' testimony.  (Tr. 316-423.)  During the trial, the jury heard the 911 calls made by Cynthia and Lexus immediately after the incident. (Tr. 431-433, 550-554.)

Though Taylor points to discrepancies in the testimony between the witnesses, the Court finds that he has not met the high burden of demonstrating that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Flowers v. Fisher, 296 F. App'x 208, 210 (2d

16

Cir. 2008) (quoting <u>Jackson</u>, 433 U.S. at 324) (internal quotation marks omitted).  Ultimately, "[f]ederal habeas courts are not free to reassess factspecific credibility judgments by juries or to weigh conflicting testimony.  On collateral review [the] Court must presume that the jury resolved any questions of credibility in favor of the prosecution."  <u>Anderson v. Senkowski</u>, No. CV-92-1007 (CPS), 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992) (internal citations omitted).  In sum, this claim is without merit.

### 2. Ineffective Assistance of Counsel Claim

Taylor contends that the Second Department's finding that he received effective assistance of counsel was an unreasonable application of clearly established federal law.  On direct appeal, Taylor argued that he received ineffective assistance of counsel when his counsel failed to ask the trial court to inquire whether the jurors could remain fair and impartial after observing the emotional scene during Anthony's testimony.  (<u>See</u> App. Div. Br. at 30-32.)  The Second Department denied this claim, stating that "the record reveals that defense counsel provided meaningful representation."  <u>Taylor</u>, 126 A.D.3d at 1019.  Thus, the Court proceeds to evaluate the merits of the claim and finds that it does not provide Taylor a basis for habeas relief.

#### i.    *Standard for Ineffective Assistance of Counsel*

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his trial counsel's performance was so inadequate that his Sixth Amendment right to counsel was violated.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984).  Therefore, the petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation."  <u>United States v. Cohen</u>, 427 F.3d 164, 167 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 688, 692).  First, it must be demonstrated that

"counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). Next, a petitioner must show that he was prejudiced by said deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotation marks and citation omitted).

Under AEDPA, federal courts must grant state courts substantial "deference and latitude" when considering claims for ineffective assistance of counsel already rejected at the state court level. Harrington v. Richter, 562 U.S. 86, 101 (2011).

Given this deferential standard, Taylor's alleged errors by trial counsel do not rise to ineffective assistance of counsel.

            ii.      *Failure to Inquire Whether the Jury Could Remain Fair and Impartial*

Taylor's claim that the jury observed the prosecutor cry during testimony is not supported by the record. The trial record reveals that the discussion regarding the prosecutor needing time to compose herself occurred outside the presence of the jury. (Tr. 527-29.)

Taylor also argues that his attorney erred by not asking for the jurors to be questioned regarding whether they could remain fair after seeing Anthony become upset during his testimony. This Court does not agree that Taylor's attorney was under such a duty, nor does Taylor provide applicable support for this contention. Though Taylor is of course entitled to a fair trial, "the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 813 (2d Cir. 2000). Here, Taylor has failed to offer any evidence showing that the jury was no longer impartial

following the emotional outburst of Anthony, and the Court is not convinced by Taylor's argument that "[o]bviously, this scene of intense emotion must have affected the jurors who witnessed it." (Pet'r's Memorandum of Law at 13.)   Moreover, defense counsel's decision not to request questioning of the jurors about their impartiality, which would have only highlighted Anthony's outburst, was not unreasonable under <u>Strickland</u>.

Additionally, Taylor has not satisfied the second prong of <u>Strickland</u>; he has not demonstrated that he was prejudiced in any way by his counsel's performance.  First, there is not a reasonable probability that the trial court would have granted a request from defense counsel that the jurors be questioned.  Second, Taylor also cannot  show prejudice because there is no evidence that any juror's impartiality was affected by Anthony's outburst and the evidence against Taylor was overwhelming.

Therefore, given the highly deferential standard in <u>Strickland</u>, the Court does not find that trial counsel rendered ineffective assistance of counsel, nor that the state court's decision was an unreasonable application of clearly established federal law.

### III. CONCLUSION

Because the Court has considered all of Taylor's arguments and found them meritless, the petition is DENIED.  A certificate of appealability shall not issue because Taylor has not made a substantial showing that he was denied a constitutional right.  <u>See</u> 28 U.S.C. § 2253(c)(2).

I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal.  Coppedge v. United States, 369 U.S. 438, 444–45 (1962).  The Clerk of the Court is respectfully directed to mail a copy of this Order to petitioner and to close the case.

**SO ORDERED.**

Dated:  August 3, 2018
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE